1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

MICHAEL PADDOCK,                          CASE NO. 1:04-CV-05932-OWW-SMS-P

10
                          Plaintiff,       FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING DEFENDANTS' MOTION
11        v.                               TO DISMISS BE GRANTED IN PART AND
                                           DENIED IN PART, AND PLAINTIFF'S
12   JEANNE WOODFORD, et al.,              DAMAGES CLAIMS BE DISMISSED FROM
                                           THIS ACTION
13                        Defendants.
                                           (Doc. 31)
14   _____/

15
16   I.        Defendants' Motion to Dismiss

17             A.        Procedural History

18             Plaintiff Michael Paddock ("plaintiff") is a state prisoner proceeding pro se and in forma

19   pauperis in this civil action pursuant to 42 U.S.C. § 2000cc-1 (Religious Land Use and

20   Institutionalized Persons Act of 2000).  This action is proceeding against defendants Mendoza-

21   Powers and Woodford ("defendants") on plaintiff's claim that they violated his rights under RLUIPA

22   by substantially burdening his religious exercise.  (Doc. 24.)  Plaintiff is seeking both injunctive

23   relief and money damages, and appears to be suing defendants in both their official and personal

24   capacities.  (Doc. 1, Comp.)

25             On June 13, 2005, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, defendant

26   Mendoza-Powers filed a motion to dismiss on the grounds that plaintiff failed to exhaust, defendant

27   is entitled to Eleventh Amendment immunity, plaintiff failed to state a claim upon which relief may

28   be granted under RLUIPA, and defendant is entitled to qualified immunity.  (Doc. 31.)  Plaintiff filed

1    an opposition on July 1, 2005, and defendant filed a reply on July 14, 2005.[1] (Docs. 33, 34.)  On

2    August 17, 2005, defendant Woodford was granted leave to join in the motion to dismiss.  (Doc. 37.)

3         B.    Motion to Dismiss for Failure to Exhaust Available Administrative Remedies

4         Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

5    respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

6    confined in any jail, prison, or other correctional facility until such administrative remedies[2] as are

7    available are exhausted."  42 U.S.C. § 1997e(a).  The section 1997e(a) exhaustion requirement

8    applies to all prisoner suits relating to prison life.  Porter v. Nussle, 435 U.S. 516, 532 (2002).

9    Prisoners must complete the prison's administrative process, regardless of the relief sought by the

10   prisoner and regardless of the relief offered by the process, as long as the administrative process can

11   provide some sort of relief on the complaint stated.  Booth v. Churner, 532 U.S. 731, 741 (2001).

12   "All 'available' remedies must now be exhausted; those remedies need not meet federal standards,

13   nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524 (citing to Booth, 532 U.S.

14   at 739 n.5).  Exhaustion must occur prior to filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199-

15   1201 (9th Cir. 2002).

16        Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

17   defense under which defendants have the burden of raising and proving the absence of exhaustion.

18   Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).   The failure to exhaust nonjudicial

19   administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion,

20   rather than a summary judgment motion.   Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l

21   Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In

22   deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look

23

24        [1] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion
     on March 29, 2005.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).  (Doc. 27.)

25        [2] The California Department of Corrections has an administrative grievance system for prisoner complaints.
26   Cal. Code Regs., tit. 15 § 3084, et seq.  "Any inmate or parolee under the department's jurisdiction may appeal any
     departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse
27   effect upon their welfare."  Id. at 3084.1(a).  Four levels of appeal are involved, including the informal level, first
     formal level, second formal level, and third formal level, also known as the "Director's Level."  Cal. Code Regs. tit
28   15, § 3084.5 (2005).

2

1    beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the court

2    concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is

3    dismissal without prejudice.  Id.

4                        2.    Discussion

5          In their motion, defendants argue that they are entitled to dismissal of this action because

6    plaintiff failed to exhaust his RLUIPA claim.  Defendants contend that, as set forth in the complaint,

7    plaintiff filed an appeal but did not pursue it to the third and final level of review.[3]  (Doc. 31,

8    Motion, 5:18-21; Doc. 1, Comp., § II.)

9          Plaintiff argues that his claim is exhausted because he did everything possible to ensure the

10   available administrative remedies were exhausted and no further avenues of relief are available.

11   (Doc. 33, Opp., p. 2-3.)  Plaintiff contends that he filed an appeal on February 2, 1998, and pursued

12   it through the Director's level of review.[4]  (Id., p. 2.)  Plaintiff contends that after RLUIPA was

13   enacted in 2000, he filed a new appeal on October 28, 2003.  (Id.)  The second appeal was rejected

14   on the ground that it was duplicative of his earlier 1998 appeal.  (Id.)  Plaintiff contends that he

15   sought reconsideration and explained that RFRA was the foundation for his original appeal and

16   RLUIPA was the foundation for his second appeal.[5]   (Id.)  Plaintiff contends that the appeals

17   coordinator rejected his request for reconsideration, stating that the prison regulations had not

18   changed since 1998, when plaintiff's first appeal was submitted.  (Id.)

19         In support of his opposition, plaintiff submits evidence that on June 19, 1998, a Director's

20   level decision was issued denying his inmate appeal.  (Id., Exhibit A, p.1-4.)  The basis of plaintiff's

21

22         [3] Although defendants cite to evidence that purports to have been submitted in support of their motion, no
23   evidence was submitted with the motion.  Therefore, the court considers only the citations in the motion to plaintiff's
     complaint.

24         [4] Plaintiff's 1998 appeal was assigned log number 98-0095. (Opp., Exhibit A, p. 5.)  The 1998 Director's
25   level decision identifies the appeal as log number 98-0098.  (Id., p. 1.)  This discrepancy appears to be the result of a
     typographical error, as the appeal issue in the decision matches the issue set forth in the appeal itself, and the date on
26   the Director's level decision matches the date set forth in the appeal form under "Director's Action."  This error
     would also explain why there was apparently some confusion as to whether plaintiff's 1998 appeal was exhausted.
27   (See e.g., Exhibit B, p. 2.)

28         [5] The Religious Freedom Restoration Act (RFRA) was found to be unconstitutional by the United States
     Supreme Court in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997).

                                                 3

appeal was that the grooming standards impinged upon his religious freedom because long hair is a part of his religious practice.  (<u>Id</u>., p. 5-7)  Plaintiff sought to be excluded from the grooming standards.  (<u>Id</u>.)

Plaintiff submits evidence that he submitted a second inmate appeal on October 28, 2003, requesting that he be exempted from the grooming standards as they applied to hair length.  (<u>Id</u>., Exhibit B, p. 6-8.)  In the appeal, plaintiff set forth the history of the enactment of the grooming standards, the holding that RFRA was unconstitutional, and the enactment of RLUIPA.  (<u>Id</u>., p. 8)  The appeals office received the appeal on November 4, 2003, and the appeals coordinator screened it out on the basis that plaintiff's appeal was duplicative of his 1998 appeal.  (<u>Id</u>., p. 9.)  After plaintiff sought reconsideration of the decision and requested that his second appeal be processed, R. J. Wilson, the appeals coordinator, issued a memorandum dated December 4, 2003, informing plaintiff that the issue had been discussed with Associate Warden Godfrey, who concurred with the rejection of plaintiff's appeal as duplicative.  (<u>Id</u>., p. 2.)  Wilson informed plaintiff that Title 15 had not been reversed, changed, or modified, and that the Director's rules and regulations had not been changed since his appeal was submitted in 1998.  (<u>Id</u>.)

On December 17, 2003, after the appeals office rejected his request for reconsideration of the decision screening out his appeal as duplicative, plaintiff sought reconsideration from the Director's level of review, arguing that while the two appeals were similar, the legal landscape had changed since 1998.  (<u>Id</u>., p.5, 7-8.)  Plaintiff acknowledged that the grooming standards had not changed but requested that the appeal be processed in light of the changed legal landscape.  (<u>Id</u>.)  Plaintiff's attempt to pursue his appeal via submission to the Director's level was rejected on January 16, 2004.  (<u>Id</u>., p. 3.)  Plaintiff was notified that his appeal had been rejected, withdrawn, or cancelled, and that he must contact the appeals coordinator and follow the instructions he had been given if he disagreed with the decision.  (<u>Id</u>.)  On April 14, 2004, after requesting an interview to discuss the rejection of his appeal on December 4, 2003, plaintiff was again informed by the appeals office that the grooming standards had not been changed since he submitted his appeal in 1998, that his appeal was considered duplicative, and that he may not appeal a duplicate issue.  (<u>Id</u>., p. 1.)

///

1    The position taken by defendants in their reply is untenable.  Defendants first argue that

2    plaintiff cannot rely on his earlier 1998 grievance to satisfy exhaustion of his current RLUIPA claim.

3    (Doc. 34, Reply, 3:3:1-12.)  Defendants contend that plaintiff's 1998 RFRA grievance is not

4    applicable to his 2004 RLUIPA claim because the factual predicates have changed.  (Id.) Defendants

5    contend that, in light of the intervening change in the law, plaintiff cannot rely a second time on an

6    old grievance involving an earlier law.  (Id.)

7    The court rejects defendants' interpretation of what is required to exhaust a claim.  The basis

8    of plaintiff's RLUIPA claim is that the grooming standards, as they apply to hair length, violate his

9    right to exercise his religion.  Although the enactment of RLUIPA in 2000 represents a change in

10   the law from 1998, when plaintiff's first appeal was filed, the grooming standards plaintiff

11   challenges as a violation of his religious rights did not change.  (See Opp., Exhibit B, p. 2.)  That the

12   legal basis upon which plaintiff is premising his claim in this action was not in existence in 1998 is

13   irrelevant.  Plaintiff's 1998 appeal, which was exhausted through the Director's level of review,

14   grieved the very facts that form the basis of claim in this pending action - that the grooming

15   standards burden the exercise of plaintiff's religion.

16   Plaintiff in fact attempted to pursue a new appeal challenging the grooming standards in light

17   of the enactment of RLUIPA but was rebuffed.  (See Opp. Exhibit B.)  Plaintiff acknowledged that

18   the grooming regulations had not changed but argued that because the legal landscape had, his

19   second appeal should be considered.  (Id., p. 5, 8.)  Defendants' argument that plaintiff's earlier

20   grievance does not exhaust his RLUIPA claim runs directly afoul of the response given to plaintiff

21   by prison officials.  Defendants apparently seek to have the court require the impossible of plaintiff

22   in the name of satisfaction of the exhaustion requirement.  A change in the law was not grounds in

23   the eyes of prison officials to allow plaintiff to pursue a new appeal and they rejected the new appeal

24   as duplicative of the 1998 appeal.  Yet defendants ask this court to find that the change in the law

25   is grounds for finding that plaintiff's 1998 appeal did not exhaust his RLUIPA claim.  The court

26   declines to do so.

27   Defendants next argue that substantial compliance with the administrative process or a good

28   faith attempt to utilize the process is insufficient.  (Doc. 34, Reply, 3:13-5:8.)  Defendants contend

1   that after plaintiff's second appeal was rejected, plaintiff ignored the requirement that he take the

2   appeal to the second level of review and instead submitted it to the third level of review (Director's

3   level). (<u>Id</u>., 3:18-20.) Defendants contend that plaintiff was informed his appeal must be completed

4   through the second level of review and that plaintiff failed to comply with the instruction,

5   discontinuing his pursuit of the appeal.  (<u>Id</u>., 3:21-24.)

6          This argument misstates both the response from the Director's level of review and the actual

7   sequence of events.  After plaintiff's second, new appeal was rejected by the appeals office, plaintiff

8   sought reconsideration of the rejection.  After plaintiff's reconsideration of the initial screening

9   decision was denied, plaintiff submitted the appeal to the Director's level of review along with an

10  explanation as to why his appeal should be considered.  Defendants' contend, incorrectly, that

11  plaintiff ignored the requirement to take his appeal to the second and third levels of review following

12  rejection at the first level and then discontinued the pursuit of his appeal.

13         Had plaintiff's appeal received a formal first level decision that was unsatisfactory to

14  plaintiff, plaintiff would have been required to submit his appeal to the second level and then the

15  third level thereafter.  In this instance, however, plaintiff's appeal was screened out.  Not only are

16  the governing regulations devoid of any requirement that a screened out appeal be pursued to the

17  next level of review, but the screening form itself informs the inmate that screening decisions may

18  not be appealed unless the inmate alleges that above reason is inaccurate.  (Opp., Exhibit B, p. 9.)

19  If an inmate wishes to appeal the screening decision, he is to directed to return the appeal to the

20  appeals coordinator with the necessary information.  (<u>Id</u>.)  There is no instruction, either on the form

21  or in the regulations, directing the inmate file his appeal at the next higher level of review.  Plaintiff

22  did what he should have done in the face of the screening decision rejecting his appeal - he

23  resubmitted the issue to the appeals coordinator.  Only after this request for reconsideration was

24  denied did plaintiff take an additional step by attempting to secure relief from the Director's level.

25  This step was not required of plaintiff, and supports his position that he tried everything to get his

26  second appeal exhausted.

27         Turning to the response given plaintiff by a staff member at the Director's level of review,

28  pursuant to section 3084.5(c), the second formal level of appeal shall be completed prior to

6

1   submission of the appeal to the third and final level of review (Director's level).  Cal. Code Regs.

2   tit 15, § 3084.5(c) (2005).  The response given to plaintiff - that the Inmate Appeals Branch provides

3   the Director's level review and the appeal form must be completed through the second level of

4   review - reflects the order in which an appeal must proceed through the formal levels of review.  As

5   previously stated, plaintiff's appeal had not been accepted into this formal process.  The failure to

6   obtain a second level response was not the deficiency in plaintiff's appeal and plaintiff was not

7   instructed to submit his appeal to the second level of review.  Rather, plaintiff was informed that his

8   appeal had been rejected, withdrawn, or cancelled, and if plaintiff disagreed with that decision, he

9   must contact the appeals coordinator and comply with whatever instructions he was given.  After

10  receiving that response, plaintiff went on to do just that.  Plaintiff contacted the appeals office for

11  the second time following the initial screening decision and was informed that there were no

12  instructions to give plaintiff because his appeal was rejected as duplicative of his 1998 appeal.

13  Plaintiff was informed that he may not appeal the same issue twice.

14      The Ninth Circuit's decision in Ngo v. Woodford, 403 F.3d 620 (9th Cir. 2005) compels the

15  rejection of defendants' argument that the rejection of plaintiff's appeal as duplicative is insufficient

16  to constitute exhaustion.  In Ngo, the plaintiff's appeal had been screened out as untimely.  Ngo, 403

17  F.3d at 624-25.  The plaintiff challenged the appeals coordinator's decision in a follow-up petition,

18  but the appeal was again rejected.  Id.  The district court, in granting the defendants' motion to

19  dismiss for failure to exhaust, reasoned that because plaintiff had not obtained a Director's level

20  decision, he had not exhausted and that the rejection of his appeal as untimely did not excuse his

21  failure to exhaust.  Id. at 625.

22      The Ninth Circuit rejected the district court's reasoning and result, finding that procedural

23  default is inapplicable.  The Court held that the plaintiff "exhausted all administrative remedies

24  available to him as required by the PLRA when he completed all avenues of administrative review

25  available to him:  His administrative appeal was deemed time-barred and no further level of appeal

26  remained in the state prison's internal appeals process."  Id. at 631.  The Court further held that the

27  "exhaustion requirement does not bar subsequent judicial consideration of an exhausted

28  administrative appeal that was denied on state procedural grounds."  Id.

7

In this instance, the appeals coordinator exercised his or her discretion to screen out plaintiff's appeal on the ground that it was duplicative and plaintiff was not allowed to appeal the same issue twice. The appeals coordinator thereafter rejected plaintiff's two attempts to seek reconsideration of the decision, once in December of 2003 and once in April of 2004. In light of the Ninth Circuit's decision in Ngo, the appeals coordinator's decision to screen out plaintiff's appeal as duplicative ends the exhaustion inquiry. Id. Exhaustion of plaintiff's second appeal occurred when the appeal was barred by the appeals coordinator on procedural grounds and "no further level of appeal remained in the state prison's internal appeals process." Id.

In summary, plaintiff's 1998 appeal, which received a Director's level decision, exhausted plaintiff's claim in this action, as it grieved the facts that give rise to the claim. Further, even if plaintiff had not exhausted his 1998 appeal, his 2003 appeal was exhausted when it was screened out by the appeals coordinator and no further avenues of relief remained available.

C.    Motion to Dismiss Damages Claim Against Defendants in Their Official Capacities

In their motion to dismiss, defendants argue that plaintiff's claim for damages against them in their official capacities is barred by the Eleventh Amendment. (Motion, 5:23-6:8.) In his opposition, plaintiff confuses defendants' argument of sovereign immunity with one for qualified immunity and his response is misplaced as a result. (Opp., p. 3-4.)

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); see also Seminole Tribe of Fla. v. Florida, 116 S.Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, claims for damages against state officials in their official capacities are barred by the Eleventh Amendment.[6] See Doe v. Lawrence Livermore Nat'l Lab., 131

---

[6] Claims for prospective injunctive relief against state officials in their official capacities are not barred by the Eleventh Amendment. Mayweathers v. Newland, 314 F.3d 1062, 1069-70 (9th Cir. 2002).

8

F.3d 836, 839 (9th Cir. 1997); <u>Eaglesmith v. Ward</u>, 73 F.3d 857, 859 (9th Cir. 1996); <u>Pena v. Gardner</u>, 976 F.2d 469, 472 (9th Cir. 1992). Accordingly, the court finds that defendants are entitled to dismissal of the damages claim against them in their official capacities.

D.      <u>Motion to Dismiss RLUIPA Claim for Failure to State a Claim</u>

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Defendants argue that plaintiff's RLUIPA claim must be dismissed because plaintiff has not been injured, and because the regulation furthers a compelling governmental interest and is the least restrictive means to achieve that interest. (Motion, 6:9-10:23.)

First, defendants' argument that the grooming policy does not substantially burden plaintiff's religious practice must be rejected in light of <u>Warsoldier v. Woodford</u>, No. 04-55879, 2005 WL 1792117 (9th Cir. Jul. 29, 2005). In <u>Warsoldier</u>, which was issued after this motion was deemed submitted, the Ninth Circuit held that because CDC's grooming policy intentionally places significant pressure on inmates to abandon their religious beliefs by cutting their hair, it imposes a substantial burden on their religious practice. <u>Id</u>.

Second, with respect to whether there is a compelling governmental interest at stake and whether the policy is the least restrictive means to achieve that interest, defendants' arguments are misplaced in the context of a motion to dismiss. Defendants bear the burden on these issues and cannot meet their burden by mere unsupported argument, as an analysis of the issues requires the consideration of evidence. <u>See Warsoldier</u>, 2005 WL 1792117. Accordingly, defendants' motion to dismiss plaintiff's RLUIPA for failure to state a claim upon which relief may be granted must be denied.

E.      <u>Motion to Dismiss Damages Claim on Qualified Immunity Ground</u>

Finally, defendants argue that they are entitled to qualified immunity on plaintiff's damages claims against them. (Motion, 10:24-13:8.)   Government officials enjoy qualified immunity from

civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendants' conduct violated a right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The court rejects defendants' argument that the factual allegations do not show that their conduct violated a right. At the pleading stage and in light of the Ninth Circuit's recent decision in Warsolider, plaintiff's allegations are sufficient to state a claim against defendants for violation of RLUIPA. Warsoldier, 2005 WL 1792117.

Turning to the second prong, the court must determine whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

RLUIPA was enacted in 2000 and to date, not many cases interpreting RLUIPA have been issued. On July 29, 2005, the Ninth Circuit held for the first time that the CDC's grooming policy imposes a substantial burden on inmates' religious exercise, in violation of RLUIPA. Warsoldier, 2005 WL 1792117. Prior to the issuance of the opinion in Warsoldier, the Ninth Circuit had not issued any opinions finding that grooming policies regulating inmates' hair length run afoul of RLUIPA. Further, although the United States Supreme Court recently upheld RLUIPA against a facial challenge to its constitutionality, Cutter v. Wilkinson, 125 S.Ct. 2113 (2005), the Supreme

1  Court has not issued any opinions which have clearly established the right at issue in any sense

2  relevant to the instant inquiry.

3       Plaintiff's argument that defendants knew via caselaw that RLUIPA forbids interference with

4  inmates' religious practices misses the point of qualified immunity.  (Opp., p.3-4.)  Qualified

5  immunity does not focus on the broad question of whether or not defendants were aware of RLUIPA

6  and its prohibition against substantially burdening the religious practice of inmates unless the burden

7  furthers a compelling governmental interest and is the least restrictive means to further that interest.

8  Rather, the focus is whether or not the contours of plaintiff's rights under RLUIPA were sufficient

9  clear that a reasonable official would know that enacting and enforcing the grooming policy

10  mandating minimum hair length would violate plaintiff's rights under RLUIPA.

11       The court finds that plaintiff's right under RLUIPA to be exempted from the grooming policy

12  based on his religious beliefs was not sufficiently clear that a reasonable official would understand

13  that what he was doing violated that right.  <u>Saucier</u>, 533 U.S. at 202.  Accordingly, the court

14  recommends that defendants' motion to dismiss plaintiff's damages claim based on qualified be

15  granted.

16      F.   <u>Conclusion</u>

17       Based on the foregoing, the court recommends that defendants' motion to dismiss for failure

18  to exhaust and motion to dismiss for failure to state a claim be denied.  However, the court

19  recommends that defendants' motion to dismiss plaintiff's damages claims against them in their

20  official capacities based on Eleventh Amendment immunity and damages claims against them based

21  on qualified immunity be granted.  If these recommendations are adopted in full, only plaintiff's

22  RLUIPA claim for injunctive relief will remain pending.

23       Accordingly, it is HEREBY RECOMMENDED that defendants' motion to dismiss, filed

24  June 13, 2005, be GRANTED IN PART and DENIED IN PART as follows:

25      1.   Defendants' motion to dismiss this action based on plaintiff's failure to exhaust be

26            DENIED on the ground that plaintiff's RLUIPA claim is exhausted;

27      2.   Defendants' motion to dismiss plaintiff's damages claims against them in their

28            official capacities on Eleventh Amendment immunity grounds be GRANTED;

3.   Defendants' motion to dismiss this action based on plaintiff's failure to state a claim upon which relief may be granted under RLUIPA be DENIED; and

4.   Defendants' motion to dismiss plaintiff's damages claims against them on qualified immunity grounds be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 7, 2005**                        /s/ **Sandra M. Snyder**
icido3                                              UNITED STATES MAGISTRATE JUDGE